UNITED STATES  DISTRICT COURT

Northern District of California

SCOTT E. BARNES,

               Plaintiff(s),

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant(s).

_____/

No. C 08-5275 MEJ

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT**

**ORDER GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY
JUDGMENT**

**I.  INTRODUCTION**

    Plaintiff Scott E. Barnes ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),
seeking judicial review of the decision of the Commissioner of Social Security ("Defendant"),
denying his claim for supplemental security income ("SSI") and disability insurance benefits
("DIB") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1601, et seq.
Pending before the Court are the parties' cross-motions for summary judgment.  (Dkt. ##25, 30.)
Having read and considered the parties' papers, the administrative record below, and the relevant
legal authority, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS
Defendant's cross-motion for summary judgment for the reasons set forth below.

**II.  BACKGROUND**

**A.  Education and Work Experience**

    Plaintiff was born on September 13, 1960.  (Administrative Record ("AR") 66.)  He received
his GED in 1995.  (AR 164.)  Plaintiff's relevant work experience includes positions as a pipefitter,
carpenter, and other construction work between 1986 and 2002.  (AR 160.)  At the time he filed for
disability benefits in February 2005, Plaintiff was not working.  (AR 66.)

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

**B.      Medical History**

Plaintiff filed for disability insurance benefits on February 28, 2005, stemming from a lower back injury he sustained on March 15, 2002, while working as a pipefitter.  (AR 66-68, 182.)  The Court finds that Administrative Law Judge ("ALJ") Richard P. Laverdure fairly and accurately summarized the relevant facts and medical history in his decision at the administrative level.  (AR 11-22.)  Accordingly, the Court shall address specific facts as necessary to illuminate an issue discussed below.

**C.      Procedural Background**

On February 28, 2005, Plaintiff filed an application for SSI and DIB under Titles II and XVI of the Social Security Act, alleging disability beginning on March 15, 2002.  (AR 66-70.)  The Social Security Administration ("SSA") denied his applications initially, (AR 49-53), and upon reconsideration (AR 42-46).  Plaintiff subsequently filed a request for a hearing before an Administrative Law Judge ("ALJ").  (AR 39.)

On June 8, 2006, ALJ Richard P. Laverdure heard Plaintiff's case.  (AR 460-489.)  Plaintiff appeared at the hearing represented by his attorney, Joel Roberts, and Joel Greenberg testified as an impartial vocational expert.  (AR 460.)  On December 6, 2007, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.  (AR 11-13.)  Plaintiff subsequently requested that the SSA Appeals Council review the matter, and on May 2, 2008, the Council found that the ALJ's decision was supported by substantial evidence and free of legal error.  (AR 7-9.)  Thus, the ALJ's decision became the final decision of the Commissioner of Social Security.  Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Act.

**D.      The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.  20 C.F.R § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).

2

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since March 15, 2002, the alleged onset date of disability. (AR 16.)

At step two, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments.[1] If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied. 20 C.F.R. § 404.1520(c). Here, the ALJ determined the evidence established that Plaintiff has the following severe impairments: "degenerative disc disease; a depressive disorder; a personality disorder, not otherwise specified; polysubstance abuse in partial remission; and an anxiety disorder, not otherwise specified. (AR 16.)

If the ALJ determines that the claimant has a severe impairment, the ALJ proceeds to the third step to determine whether it meets or equals an impairment in the Listing of Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, the claimant is conclusively presumed to be disabled. 20 C.F.R. § 404.1520(e). Here, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (AR 18.)

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's Residual Functional Capacity ("RFC") prevents the claimant from performing past relevant work. 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting

---

[1] At step two, "severe" means any impairment or combination of impairments that significantly limits claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c), 20 C.F.R. §416.920(c). This is a de minimis inquiry designed to weed out nonmeritorious claims at an early stage in the analysis. *Bowen v. Yukert*, 482 U.S. 137, 148, 153-4 (1987). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two of the analysis. *Id*. at 158.

3

despite limitations caused by medically determinable impairments.  20 C.F.R. § 416.945(a).  When

assessing an individual's RFC, the ALJ must consider his or her symptoms (such as pain), signs, and

laboratory findings together with other evidence we obtain.  20 C.F.R. § 404, Subpt. P, App. 2 §

200.00(c).  If the claimant is able to perform work which he or she performed in the past, a finding

of "not disabled" is made and disability benefits are denied. 20 C.F.R. § 416.920(f).  Here, the ALJ

determined that Plaintiff has the RFC "to perform light work that permits alternating sitting and

standing at will; he can crouch, crawl, kneel, stoop, balance, and climb occasionally; he should have

no public interaction or contact and only rare to occasional interaction with co-workers; he is limited

to performing simple, repetitive tasks.  (AR 18.)

In the fifth step of the analysis, the burden shifts to the ALJ to prove that there are other jobs

existing in significant numbers in the national economy which the claimant can perform consistent

with the medically determinable impairments and symptoms, functional limitations, age, education,

work experience and skills.  20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c).  A claimant is

entitled to disability benefits only if he or she is not able to perform other work.  20 C.F.R. §

404.1520(g); 20 C.F.R. § 416.920(f).  Here, the ALJ determined that Plaintiff is unable to perform

his past relevant work.  (AR 20.)  However, he opined that "there are jobs that exist in significant

numbers in the national economy that the claimant can perform.  (AR 21.)  These jobs include

employment as a "Small Parts Assembler" and a "Finish Inspector."  (AR 21.)  As such, the ALJ

determined that Plaintiff is not disabled.  (AR 22.)

### III.   LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings of fact are "supported by

substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*,

246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  Substantial evidence means more than a

scintilla, but less than a preponderance, or evidence which a reasonable person might accept as

adequate to support a conclusion. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The

court must consider the administrative record as a whole, weighing both the evidence that supports

and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.* Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990) (citation omitted).

## IV.  DISCUSSION

### A.     Plaintiff's Failure to Oppose Defendant's Cross-Motion

As a preliminary matter, the Court notes that Plaintiff did not file a reply brief in support of his motion and in opposition to Defendant's cross-motion for summary judgment. While the Court recognizes that Plaintiff had no duty to oppose Defendant's cross-motion, the record now reflects that Defendant's motion is unopposed. Accordingly, for the reasons argued in Defendant's motion, the Court finds that summary judgment should be granted in favor of Defendant and against Plaintiff. Alternatively, summary judgment should be granted in favor of Defendant for the reasons set forth below.

### B.     Whether the ALJ Erroneously Substituted His Own Opinion for the Consultative Examiner's Opinion and Evidence in the Record Regarding Plaintiff's Marijuana Use.

Plaintiff first argues that the ALJ erroneously substituted his own opinion for the consultative examiner's opinion and evidence in the record regarding Plaintiff's marijuana use. Plaintiff quotes part of the ALJ's opinion, in which he reviews the September 28, 2006 Comprehensive Psychiatric Evaluation prepared by Michael Zizmor, M.D., then instructs the Court to compare it to Dr. Zizmor's statements. However, Plaintiff fails to provide any specifics in Dr. Zizmor's evaluation and statements that he would like the Court to compare. Regardless, having reviewed both documents, the Court finds that Plaintiff's argument is without merit.

1.     Dr. Zizmor's Evaluation vs. the ALJ's Decision

In his opinion, the ALJ notes that Dr. Zizmor stated that Plaintiff's "psychosis possibly stems from when he used drugs and alcohol." (AR 17.) A review of Dr. Zizmor's opinion confirms this.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Specifically, Dr. Zizmor states that Plaintiff "suffers substance abuse difficulties along with

2    probable personality disorder" and that he might have "moderate difficulties interacting with

3    coworkers, supervisors, and the public because of a history of . . . substance abuse." (AR 357-58.)

4    Thus, the Court finds that the ALJ properly reviewed and considered Dr. Zizmor's opinion as part of

5    his decision.

6           Interestingly, neither Dr. Zizmor's evaluation nor the ALJ's review of his evaluation directly

7    addresses Plaintiff's marijuana use in a way that clarifies Plaintiff's argument. While Plaintiff

8    argues that the ALJ substituted his own opinion for that of Dr. Zizmor's regarding marijuana use,

9    Dr. Zizmor's evaluation is silent on the issue. Perhaps recognizing this, Plaintiff switches his

10   argument midway through this section of his brief to argue that the ALJ "concluded that [his]

11   condition had improved because [his] prognosis was due to previous alcohol and drug use." (Pl.'s

12   Mot. 10:13-15, Dkt. #25.) Plaintiff provides no citation to the ALJ's opinion for this conclusion

13   because none exists - at no point in his review of Dr. Zizmor's evaluation did the ALJ state

14   Plaintiff's condition had improved. Accordingly, the Court finds no support for Plaintiff's

15   argument.

16          2.    Plaintiff's Marijuana Use

17          As part of the same section of his motion, Plaintiff also argues that the ALJ "displays [a]

18   willingness to distort the record by claiming that [Plaintiff] 'continues to use marijuana.'" *Id.* at

19   11:12-16. However, in making this statement, the ALJ is focusing on Plaintiff's subjective

20   credibility and not Dr. Zizmor's evaluation. Thus, the only inference the Court can draw from

21   Plaintiff's brief is that he objects to the ALJ's finding regarding subjective credibility.

22          "To determine whether a claimant's testimony regarding subjective pain or symptoms is

23   credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036

24   (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective

25   medical evidence of an underlying impairment 'which could reasonably be expected to produce pain

     or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).

26   "The claimant, however, 'need not show that her impairment could reasonably be expected to cause

27   the severity of the symptom she has alleged; she need only show that it could reasonably have cause

28

UNITED STATES DISTRICT COURT
For the Northern District of California

some degree of the symptom.'" *Id.* (quoting *Smolen*, 80 F.3d at 1282).

Second, if the ALJ determines that the claimant has presented objective medical evidence, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen*, 80 F.3d at 1281). Such specificity is crucial so as to enable effective judicial review. *Mersman v. Halter*, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight"). Where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record," courts must not engage in second-guessing. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

In his decision, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease; a depressive disorder; a personality disorder, not otherwise specified; polysubstance abuse in partial remission; and an anxiety disorder, not otherwise specified. (AR 16.) However, he determined that Plaintiff's symptom allegations were "not well-supported by the medical evidence and therefore . . . not entirely credible." (AR 20.) In making this determination, the Court finds that the ALJ offered specific, clear and convincing reasons for doing so, as detailed below.

After reviewing the record and observing Plaintiff's behavior at the hearing, the ALJ found that Plaintiff's testimony was not entirely credible (AR 20, 460-489). The ALJ stated that Plaintiff "has a history of drug addiction and alcohol abuse and continues to use marijuana, although he claims 'only one time in the past.'" (AR 20, 475); *see Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999) (observations of ALJ not improperly included). This inference was based on the ALJ's review of the record and interactions with Plaintiff at the hearing (AR 20). *See Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (a claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings). Objective medical records showed that Plaintiff had a longstanding drug habit and problems with addictive behavior (AR 184, 321, 327, 415). Moreover, the ALJ gave multiple specific and legitimate reasons for discrediting

Plaintiff's testimony, including (I) medical findings that Plaintiff was malingering (AR 17, 417); (ii) inconsistencies within Plaintiff's own testimony (AR 19-20, 66, 469); and (iii) inconsistencies between Plaintiff's allegations and the medical evidence (AR 20, 417).

First, Terrence Riley, Ph.D., evaluated Plaintiff and opined that he "exaggerated" his symptoms (AR 17, 417). Evidence of malingering is sufficient reason to discount Plaintiff's credibility. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (claimant's complaints rejected because physician reported his symptoms were amplified). Second, Plaintiff claimed eligibility for benefits based on an alleged inability to work, but he was simultaneously in vocational school with a plan for gaining employment (AR 19, 405, 469). *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding the ALJ properly considered inconsistencies between claimant's testimony and her conduct in assessing Plaintiff's credibility). Third, Plaintiff alleges an inability to work with others, but doctors found him oriented and attentive and the ALJ found that he was able to focus and answer questions coherently at the hearing (AR 20, 321, 466-69). *Id.* Where, as here, the ALJ makes specific findings justifying his decision to discredit Plaintiff's allegations, and those findings are supported by substantial evidence in the record, the ALJ's decision must be upheld. *Fair*, 885 F.2d at 604.

Even if the Court were to find that the evidence does not support the ALJ's inference, it was harmless error given it was inconsequential to the ultimate non-disability determination (AR 22). *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (holding that an error is harmless if it was "inconsequential to the ultimate nondisability determination") (internal quotation marks and citation omitted); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (reviewing cases and noting that the court has affirmed when the ALJ's mistake was irrelevant to the ALJ's ultimate disability conclusion); *Matthews*, 10 F.3d at 681 (possibly under-inclusive hypo to VE would be harmless error given other reliable evidence); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (error respecting vocational factor, even if conceded, was harmless). The ALJ's statement regarding Plaintiff's marijuana use was irrelevant to his ultimate determination of non-disability because the ALJ considered all of Plaintiff's symptoms, inclusive of those caused by or exacerbated by drug use, in coming to his conclusion that Plaintiff was capable of light unskilled work with several non-exertional limitations. (AR 18.) Plaintiff's use or lack of use of marijuana is unrelated to the outcome of this case. Also, the ALJ's ultimate conclusion that Plaintiff was not

credible was based on a significant number of specific and legitimate reasons, as discussed above (AR 20). *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding the ALJ's decision to discredit claimant's testimony about his pain despite the ALJ incorrectly concluding from the fact that claimant watched six hours of television a day that claimant could sit for at least six hours during a work day because the ALJ's decision was, nevertheless, supported by substantial evidence).  An ALJ's decision should not be reversed for harmless error.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Based on this analysis, the Court finds that the ALJ properly discredited Plaintiff's subjective complaints, and provided specific, clear and convincing reasons for doing so.

3.    Noncompliance with Medical Treatment

Plaintiff also argues that the ALJ based his decision on medical noncompliance, but failed to meet the legal requirements of such a denial.  Specifically, Plaintiff argues that, although the ALJ did not state that his decision was based on noncompliance with medical treatment, he discussed this issue at length in his decision.  Although he raises this argument in a separate section of his brief, (Pl.'s Mot. 12:14-13:23, Dkt. #25), he concludes the section by stating: "the ALJ's reliance on noncompliance in assessing the claimant's credibility is mistaken and is erroneous."  Thus, the Court finds it appropriate to include Plaintiff's argument here.

Contrary to Plaintiff's argument, the ALJ did not base his credibility finding on Plaintiff's noncompliance.  (AR 20.)  The ALJ merely summarized Plaintiff's testimony concerning his noncompliance, right after he summarized Plaintiff's work history and right before he summarized Plaintiff's living situation.  (AR 19-20.)  Plaintiff testified at length about his suspicions regarding prescription drugs.  (AR 474-81.)  The ALJ's recounting of the evidence does not mean that he gave weight to that evidence.  An ALJ may consider noncompliance as one of many factors in determining a claimant's credibility as to the severity and persistence of his symptoms.  SSR 96-7p; *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (holding ALJ properly discredited claimant's testimony regarding severity of his pain in light of lack of strong medications).  In this case, however, the ALJ does not mention noncompliance among the numerous reasons given for discrediting Plaintiff's allegations.  (AR 20.)

**C.    Whether Substantial Evidence Supports the ALJ's RFC Assessment**

Next, Plaintiff argues that in determining Plaintiff's RFC, the ALJ modified Dr. Zizmor's

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   evaluation "solely on the basis of [his] speculation as to [Plaintiff's] improvement over time,"

2   thereby failing to apply the correct legal standard for making such a determination.  (Pl.'s Mot. 11:6-

3   16, Dkt. #25.)  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the

4   record, including inter alia, medical records, lay evidence, and 'the effects of symptoms, including

5   pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec.*

6   *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96-8p, 1996 WL 374184, at *5).  "SSR 96-

7   8p directs that '[c]areful consideration' be given to any evidence about symptoms 'because

8   subjective descriptions may indicate more severe limitations or restrictions that can be shown by

9   medical evidence alone.'"  *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *5).  "When giving such

10   consideration, if the record establishes the existence of a medically determinable impairment that

11   could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the

12   credibility of the claimant's statements about the symptoms and their functional effect."  *Id.* (internal

    citations omitted).

13          Here, after determining Plaintiff's impairments, the ALJ determined that Plaintiff had the

14   RFC "to perform light work that permits alternating sitting and standing at will; he can crouch,

15   crawl, kneel, stoop, balance, and climb occasionally; he should have no public interaction or contact

16   and only rare to occasional interaction with co-workers; and he is limited to performing simple,

17   repetitive tasks."  (AR 18.)  Based on Plaintiff's RFC, under step four, the ALJ determined that

18   Plaintiff could not perform his past relevant work, but, under step five, Plaintiff could perform other

19   work.  (AR 20-22.)  The Court finds that substantial medical evidence supports the RFC.

20          The ALJ weighed evidence of Plaintiff's back injury, including MRIs and reports from

21   Calvin Pon, M.D., Bradley Bettinger, M.D., and Fred VonStieff, M.D.  (AR 16, 176-83, 324-26.)

22   Dr. Pon opined that Plaintiff could perform light work activity with some limitations in performing

    postural activities such as climbing stairs and ladders, crouching, kneeling, crawling and stooping.

23   (AR 17, 324-26.)  The ALJ incorporated these limitations into the RFC.  (AR 18.)

24          The ALJ also considered mental health reports.  Contrary to Plaintiff's argument, the ALJ

25   accurately paraphrased the report of Dr. Zizmor, whose findings support the RFC.  (AR 17, 355-58.)

26   *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) (holding that it is the province of the

27   ALJ to examine all of the evidence, resolve differences based on Plaintiff's longitudinal medical

    history, and determine the RFC); *Magallanes*, 881 F.2d at 750 (the ALJ is responsible for analyzing

28

10

UNITED STATES DISTRICT COURT
For the Northern District of California

the evidence).  Dr. Zizmor found Plaintiff coherent, directed, linear, and cooperative (AR 357).  He observed that Plaintiff was "an animated gentleman," who "generally appears likable and not terribly depressed."  (AR 17, 356-57.)  Dr. Zizmor also found Plaintiff appeared mildly depressed and congenial.  (AR 357.)  He assessed Plaintiff with a Global Assessment of Functioning ("GAF") of 50 (AR 17, 357.)  *Morgan*, 169 F.3d at 598 (a GAF score does not delineate functional limitations or occupational impairments).  Dr. Zizmor opined that Plaintiff may have had mild difficulty understanding, remembering and carrying out one to two part job instructions, might have had moderate difficulties interacting with others in the workplace due to his history of sociopathic behavior, and might have had trouble adjusting to the stress and pressure of the work environment in most areas of adjustment.  (AR 17, 355-58.)  In considering Dr. Zizmor's report, the ALJ did not reject Dr. Zizmor's opinion.  (AR 17.)  In particular, the ALJ incorporated Dr. Zizmor's assessment that Plaintiff might have moderate difficulties interacting with others and adjusting to work pressure in finding Plaintiff restricted from work with the public, limited in interactions with co-workers, and limited to simple, repetitive tasks. (AR 18.)  Plaintiff's contention that the ALJ rejected Dr. Zizmor's opinion is not supported by either a plain reading of the ALJ's decision or the weight of the evidence.  Rather, the ALJ considered Dr. Zizmor's findings regarding functional assessments and interpreted them within the framework and terminology of the Social Security Regulations and the record as a whole.  (AR 18.)  *See* 20 C.F.R. §§ 404.1520a, 404.1544 (2009); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating ALJ's role is to interpret medical evidence); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (stating the ALJ's role is to resolve conflicts and ambiguities in the evidence).

Additionally, the ALJ gave weight to findings by Janine Marinos, Ph.D., who concluded that Plaintiff could perform unskilled jobs.  (AR 16-17, 320-23.)  Dr. Marinos found that Plaintiff had an anxiety disorder and a history of polysubstance abuse in sustained remission, a personality disorder, and chronic back pain.  (AR 16, 323.)  Dr. Marinos reported that Plaintiff had a history of over one hundred (100) arrests on charges including robbery, kidnaping, assault with a deadly weapon, and attempted murder.  (AR 17, 320, 355.)  Dr. Marinos' mental health exam showed Plaintiff's Full Scale I.Q. was 86, he had poor immediate and delayed recall, and normal visual memory.  (AR 17, 321-23.)  Dr. Marinos noted that Plaintiff remained capable of understanding and carrying out simple, repetitive job instructions, but would likely have mild difficulty with detailed tasks and

11

getting along with others.  (AR 17, 323.)  Again, the ALJ incorporated these limitations into the RFC (AR 18).

Further, Dr. Riley evaluated Plaintiff's psychological health and diagnosed Plaintiff with a psychotic disorder, with the observation that Plaintiff appeared to exaggerate his symptoms and test results were of questionable validity.  (AR 17, 414-18.)  He concluded that Plaintiff "needs medication and supportive psychotherapy to be able to stabilize and become more focused so that he can pursue employment."  (AR 418.)  The ALJ incorporated Dr. Riley's opinion in his assessment.  (AR 17-18.)

The ALJ's RFC determination accounted for all of Plaintiff's symptoms and impairments.  (AR 16-18.)  *See* 20 C.F.R. § 404.1523 (2009) ("The regulations require that if a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis").  When a claimant abuses alcohol or drugs, the ALJ must first determine whether the claimant is disabled inclusive of impairments caused by or exacerbated by the alcohol or drugs.  *See* 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.");  20 C.F.R. §§ 404.1535, 416.935 (2009).  Next, if the claimant is found disabled, the ALJ must determine whether his alcohol or drug abuse is material to the disability.  *Id.*  In this case, despite Plaintiff's allegations to the contrary, the ALJ did not reach step two of the alcohol and drug analysis. Rather, the ALJ found that Plaintiff's impairments, including symptoms possibly caused by or exacerbated by heroin, cocaine, methamphetamine, marijuana or alcohol use, did not prohibit him from working under step five (AR 16-22).  *See* 20 C.F.R. §§ 404.1529, 416.929 (2009); SSR 96-4p.

Based on this analysis, the Court finds that the ALJ properly evaluated Plaintiff's RFC.  The ALJ supported his findings with substantial evidence in the medical record, and, as discussed, he properly considered and rejected Plaintiff's subjective complaints.  Accordingly, Plaintiff's argument is without merit.

**D.     Whether the ALJ Properly Determined that Plaintiff Could Perform the Jobs Suggested by the Vocational Expert**

Finally, Plaintiff argues that the ALJ posed an inaccurate and incomplete hypothetical question to the vocational expert.  Specifically, Plaintiff argues that the ALJ rejected Dr. Zizmor's

evaluation "solely on the basis of the ALJ's speculation as to the claimant's improvement over time." (Pl.'s Opp'n 11:9-11.) Plaintiff maintains that this alleged rejection resulted in a inaccurate hypothetical based on a flawed RFC. However, as discussed above, Plaintiff's contention that the ALJ rejected Dr. Zizmor's opinion is not supported by either a plain reading of the ALJ's decision or the weight of the evidence. Rather, the Court finds that the ALJ properly considered Dr. Zizmor's findings regarding functional assessments and interpreted them within the framework and terminology of the Social Security Regulations and the record as a whole.

Further, in considering the hypothetical, the Court finds that the hypothetical question posed by the ALJ to the vocational expert properly reflected the RFC and the weight of the medical evidence. Based on the RFC, the ALJ determined that Plaintiff could perform work under step five of the analysis. (AR 20-22.) However, the ALJ determined that Plaintiff could not perform his past relevant work. (AR 20.) Accordingly, the ALJ had the burden to prove that there are other jobs existing in significant numbers in the national economy which Plaintiff can perform consistent with the medically determinable impairments and symptoms, functional limitations, age, education, work experience and skills. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c). There are two ways to meet this burden: (1) the testimony of a vocational expert, or (2) reference to the Medical-Vocational Guidelines. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). Here, the ALJ relied upon the testimony of a vocational expert.

"[T]he ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett*, 180 F.3d at 1101. "At the hearing, the ALJ poses hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration." *Id.* (quoting *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). The vocational expert then testifies as to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of not disabled. *Id.* (citation omitted.)

UNITED STATES DISTRICT COURT
For the Northern District of California

1    "The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by

2  the medical record." *Id.* (citation omitted).  However, the ALJ need only include those limitations

3  supported by substantial evidence.  *Robbins*, 466 F.3d at 886.  If the ALJ does not include all

4  claimed impairments in his hypothetical, he must make specific findings explaining his rationale for

5  disbelieving any of the claimant's subjective complaints not included.  *Light v. Soc. Sec. Admin*., 119

6  F.3d 789, 793 (9th Cir. 1997).  Consequently, "if the assumptions in the hypothetical are not

7  supported by the record, the opinion of the vocational expert that claimant has a residual working

8  capacity has no evidentiary value."  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

9    At the August 29, 2007 hearing, the ALJ posed the following hypothetical to vocational

10  expert Joel M. Greenberg:

11    All right if we assume someone of Claimant's age, education and
     experience, assume a capacity for light work.  Excuse me that
12    would permit alternating sitting and standing at will.  Climbing,
     crouch, stoop, kneel, balance and I guess crouch are all at
13    occasional.  All the posturals are at occasional.  No public contact.
     Required interaction with co-workers is rare to occasional and the
14    capacity for simple repetitive or rote tasks.  Exertionally we will
     rule out all past work so the question in what other jobs, if any,
15    exist with that hypothetical RFC?

16  (AR 485.)  In response, the vocational expert ("VE") offered two job prospects: (1) small parts

17  Assembler, and (2) finish inspector.  (AR 485-86.)  As to Plaintiff's ability to work as a small parts

18  assembler, the VE testified that the exertional level is light, around 50 percent of available jobs

19  allows for a sit/stand option, and that there were 144,000 such jobs in the United States.  (AR 485-

20  86.)  As to Plaintiff's ability to work as a finish inspector, the VE testified that the exertional level is

21  also light, at least 50 percent of the jobs have a sit/stand option, and there are about 240,000 such

22  jobs in the national economy.  (AR 486-87.)

23    The Court finds that the VE's testimony is consistent with the Dictionary of Occupational

24  Titles, and therefore no conflict exists.  *See* SSR 00-04p ("When vocational evidence provided by a

25  VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict

26  before relying on the VE or VS evidence to support a determination or decision that the individual is

27  or is not disabled. The adjudicator will explain in the determination or decision how he or she

28

14

UNITED STATES DISTRICT COURT
For the Northern District of California

1    resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how

2    the conflict was identified.")  Further, a VE's "recognized expertise provides the necessary

3    foundation for his or her testimony . . . no additional foundation is required." *Bayliss v. Barnhart*,

4    427 F.3d 1211, 1218 (9th Cir. 2005).

5         Plaintiff also argues that the ALJ improperly disregarded his counsel's hypothetical

6    questions at the hearing.  Specifically, Plaintiff's counsel imposed the following additional

7    limitations:

8              Mild difficulties understanding, carrying out and remembering one or
               two step job instructions.  Moderate difficulties interacting with co-
9              workers, supervisors and the public.  Moderate difficulties with
               attendance and safety issues.  Moderate difficulties with concentration,
10             persistence and pace.  Mild to moderate difficulties dealing with
               changes in the workplace.

11

12   (AR 488.)  In response, the VE stated that there are no such jobs that Plaintiff could perform. *Id.*

13   However, the Court finds that the ALJ properly disregarded the vocational expert's response to

14   Plaintiff's hypothetical question because, as discussed above, his questions were inconsistent with

15   the facts of this case. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is

16   free to accept or reject restrictions in a hypothetical question that are not supported by substantial

17   evidence.").  Thus, the ALJ was not required to entertain more restrictive hypothetical questions

18   based upon Plaintiff's testimony because, as noted above, the ALJ properly discounted Plaintiff's

19   testimony that his counsel attempted to include in the hypothetical.  Further, as discussed above,

20   substantial evidence supported the hypothetical the ALJ posed to the VE.

21        Based on this analysis, the Court finds that the ALJ correctly determined that Plaintiff can

22   perform the tasks required of a small parts assembler and finish inspector, as determined by the VE.

23   Accordingly, Plaintiff's argument is without merit.

24                                    **V.  CONCLUSION**

25        Based on the foregoing analysis, the Court hereby DENIES Plaintiff's motion for summary

26   judgment and GRANTS Defendant's cross-motion for summary judgment.

27

28

                                                15

**IT IS SO ORDERED.**

Dated: June 17, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge